# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TORACE D. WEAVER,

        Petitioner,    :    Case No. 3:18-cv-393

  - vs -        District Judge Walter H. Rice
        Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution

        :

        Respondent.

## ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS*; REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Torace Weaver, pursuant to 28 U.S.C. § 2254, is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Proceedings. Weaver pleads that he was convicted of murder, endangering children, and obstructing official business in the Common Pleas Court of Montgomery County, Ohio, and sentenced to fifteen years to life imprisonment.

Weave has not paid the initial filing fee, but because he is incarcerated on a lengthy sentence the Court finds he is indigent and *sua sponte* grants him leave to proceed *in forma pauperis*.

Weaver's conviction was affirmed by the Ohio Second District Court of Appeals. *State v. Weaver*, 2018-Ohio-2329 (2nd Dist. June 15, 2018), appellate jurisdiction declined, 2018-Ohio-4092. He pleads the following Grounds for Relief:

    **Ground One:** Actual Innocence

**Supporting Facts:** Despite the arbitrary misuse of the statutory language which would provide a charge of Reckless Homicide, in violation of R.C. § 2903.04(A), Petitioner is actually innocent of any charge. While being a foster parent incurs great responsibility, it does not include being liable for a child's horrific past.

**Ground Two:** Weight of the Evidence – Equal Protection

**Supporting Facts:** A manifest weight analysis reviews the entire record. Despite this clear guidance, the lower court did not consider: 1) A drug-birth, 2) Removal from the birth-mother, 3) abuse by sibling, 4) History of victim's erratic and violent behavior.

**Ground Three:** Due Process

**Supporting Facts:** Despite the prosecutor's broad duty that justice is served, the prosecutor knowingly provided false statements how "this healthy two-year old was bruised and burned." This false statement which was sustained by the lower court was presumptive and prejudicial.

**Ground Four:** Ineffective Assistance of Counsel

**Supporting Facts:** By carelessness or by design, counsel ignored the plain language of the legislature, including but not limited to, failing to object to the ranting of the prosecutor.

(Petition, ECF No. 1, PageID 5-10.)

The Second District Court of Appeals' opinion recites this procedural history:

> **[*P2]** The Children Services Division of the Montgomery County Department of Job and Family Services placed S.T. and his brother T.W. with Weaver and his wife for foster care on September 24, 2015. Tr. of Proceedings 404:21-406:13. S.T. was approximately two years old at the time, and his brother was approximately three. *Id.* at 395:21-396:8.
>
> **[*P3]** At or around 6:48 p.m. on November 18, 2015, personnel with the Dayton Fire Department and the Dayton Police Department were dispatched to the King of Glory Church at 5001 Genesee Avenue in response to a 911 call. *Id.* at 340:11-341:24, 343:10-344:14, 453:21-454:4, 484:1-485:13 and 506:11-507:13. The first emergency personnel to arrive found S.T. lying on the floor of the chancel with Weaver administering cardiopulmonary resuscitation. *Id.* at 484:1-487:4.

[*P4] While Weaver was being interviewed, paramedics and emergency medical technicians attempted to revive S.T. *Id.* at 454:25-455:15, 457:4-459:16, 487:5-489:24. Their efforts, however, proved unsuccessful, so they transported S.T. by ambulance to Good Samaritan Hospital. *Id.* at 463:20-465:25. Less than an hour afterward, S.T. was pronounced dead. *See id.* at 454:16-454:18, 464:23-464:25, 467:9-467:13, 468:1-468:9, 484:19-484:24 and 489:1-489:8.

[*P5] On August 26, 2016, a Montgomery County grand jury indicted Weaver on the following charges: Count 1, murder pursuant to R.C. 2903.02(B) and 2903.11(A)(1); Count 2, murder pursuant to R.C. 2903.02(B) and 2919.22(B)(1); Count 3, involuntary manslaughter pursuant to R.C. 2903.04(A) and 2919.22(A); Count 4, felonious assault pursuant to R.C. 2903.11(A)(1); Count 5, endangering a child pursuant to R.C. 2919.22(B)(1); Count 6, endangering a child pursuant to R.C. 2919.22(A); Count 7, reckless homicide pursuant to R.C. 2903.041; and Count 8, obstructing official business pursuant to R.C. 2921.31(A). Weaver and his wife, Shureka, were tried jointly as co-defendants, and the jury found Weaver guilty as charged after a four-day trial.

[*P6] At Weaver's sentencing hearing on May 5, 2017, the court merged Count 1 with Counts 2, 3, 4, 5 and 7, and the State elected to proceed on Count 1. The court sentenced Weaver to prisonfor a term of 15 years to life on Count 1; to 36 months in prison on Count 6, consecutive to the sentence for Count 1; and to 90 days in jail on Count 8. On May 9, 2017, the court filed its termination entry, and Weaver timely filed his notice of appeal on May 10, 2017.

*State v. Weaver, supra.*

## Analysis

**Ground One: Actual Innocence**

In his First Ground for Relief, Weaver seeks release because he claims he is actually innocent. Being actually innocent of the offenses of which one has been convicted is, however,

3

not a basis for habeas corpus relief. A federal district court can grant habeas relief only on the basis that the petitioner is confined in violation of the Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). The Supreme Court has repeatedly refused to recognize actual innocence as a basis for habeas relief. *Herrera v. Collins*, 506 U.S. 390 (1993).

> Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518 (2006).

*Raymond v. Sheets*, 2012 U.S. Dist. LEXIS 160374, *26-27 (S.D. Ohio Nov. 8, 2012); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *185-86 (S.D. Ohio Sept. 24, 2014)(Frost, D.J.)

Because Petitioner's First Ground for Relief does not state a claim upon which habeas corpus relief can be granted, it should be dismissed without prejudice.

**Ground Two: Weight of the Evidence**

In his Second Ground for Relief, Weaver argues that the Second District did not properly apply the manifest weight of the evidence test to his case. The Constitution does not mandate a process for appellate review of a weight of the evidence claim, which is also, like actual innocence, not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

An allegation that a verdict was entered upon **insufficient** evidence, however. does state a

claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). The Court will liberally construe Weaver's *pro se* Petition to raise an insufficiency of the evidence claim. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

The Second District considered both manifest weight and sufficiency assignments of error which they decided as follows:

> **[\*P24]** With respect to his convictions on Counts 1 and 6, murder under R.C. 2903.02(B) and endangering a child under R.C. 2919.22(A), Weaver argues that the trial court erred by overruling his motion for acquittal. *See* Tr. of Proceedings 692:15-693:12; Appellant's Br. 20. Emphasizing the lack of "direct evidence" regarding the injuries that caused S.T.'s death, Weaver suggests that "reasonable mind[s] could not" have found that he "knowingly caused physical harm" to S.T., and pointing similarly to "other

5

plausible explanations" for S.T.'s injuries, he suggests that the evidence did not support his conviction for endangering a child. *Id.* at 20-22. For the same reasons, he argues that the jury lost its way in finding him guilty of the two offenses. *See* Appellant's Br. 22-24.[1]

 **[\*P25]** An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a claim based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, 104 N.E.3d 143, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is legally sufficient as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997- Ohio 52, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the "'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus

 **[\*P28]** Weaver was convicted on Count 1 of murder as the proximate result of felonious assault. To obtain this conviction, the State had to prove, under R.C. § 2903.11(A)(1), that Weaver "knowingly * * * [c]ause[d] serious physical harm" to S.T. and, under R.C. 2903.02(B), that S.T. died as a proximate result. A person acts "knowingly regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature." (Emphasis added.) R.C. 2901.22(B). Without an admission, proof "of an accused's purpose or specific intent invariably requires circumstantial evidence." *State v. Mundy*, 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (2d Dist.1994).

 **[\*P29]** When emergency personnel arrived at the church on the evening of November 18, 2015, Weaver initially reported that he had heard a thud while in the bathroom, and as he emerged, he saw S.T. lying face down on the floor, unresponsive. Tr. of Proceedings 510:19-512:19. He speculated that S.T. might have fallen off of a table. *See id.* at 339:15-340:15, 343:2-345:24, 491:7-492:25. Nevertheless, in a subsequent interview, Weaver told a detective that he was spinning S.T. in a circle and lost his balance, causing

---

[1] A motion for acquittal under Ohio R. Crim. P. 29 raises an insufficiency of the evidence claim. A claim that the jury "lost its way" raises a manifest weight claim. Thus the Second District is here considering those two claims together.

S.T. to hit a wall. *Id.* at 657:2-657:23, 662:8-665:20 and 667:3-670:22.

 **[\*P30]** A forensic pathologist employed by the Montgomery County Coroner testified that S.T.'s autopsy revealed no fewer than 20 traumas to the front and back of his head, some of which could have been produced by the impact of knuckles. Tr. of Proceedings 262:10-262:19, 268:11-273:2, 279:11-286:20. One of the traumas, a fracture on the back of S.T.'s skull near his brain stem, required "significant force" to produce, comparable to "a car accident" or "maybe a fall from a significant height" in excess of four feet. *Id.* at 283:1-284:9 and 287:11-288:4. The pathologist testified further that the trauma to the back of S.T.'s skull, together with the other traumas to his head, were "life-ending injur[ies]" and that "[b]lunt force trauma of the head" caused his death. *Id.* at 284:10-284:24 and 286:21-287:3. From the nature of these injuries, the pathologist determined S.T's death to be a homicide. *Id.* at 286:20-287:3.

 **[\*P31]** Shaton Smith testified that she knew S.T. and his brother as a result of her acquaintance with S.T.'s previous foster parent, meeting the boys when S.T. was a few months old and interacting with them almost daily until they were transferred to the care of Weaver and his wife. *Id.* at 375:7-376:4 and 377:3-378:16. During this time, Smith helped S.T.'s previous foster parent by changing S.T.'s diapers, dressing the boys, preparing food, and running errands; on one occasion, Smith bathed S.T. *Id.* at 378:12-379:14 and 383:10-383:22. Smith indicated that S.T. had no serious injuries to her knowledge, that his ability to walk seemed typical for his age, and that he did not seem especially clumsy. *Id.* at 384:3-385:17.

 **[\*P32]** An ongoing caseworker with the Children Services Division, responsible for supervising the foster care of children, testified to her experience with S.T. and his brother in the weeks before and after the two boys were placed with the Weavers. *Id.* at 392:15-393:12, 399:9-401:22. The case worker found S.T. to be "very sweet, kind [and] lovable" when she first encountered him, but visiting him after a week in the Weavers' care, she found him withdrawn and tearful. *See id.* at 400:5-401:22 and 406:19-409:4. Among other things, the caseworker noted bruises on S.T.'s cheeks, which Shureka Weaver attributed to his brother pushing him down a staircase. *Id.* at 409:5-409:15.

 **[\*P33]** An adoption caseworker with the Children Services Division, responsible for finding foster children permanent homes with adoptive parents, testified that she visited the Weavers' residence on the evening of November 17, 2015, to discuss the boys'

future placement. *See id.* at 430:3-430:10, 432:7-433:11. The caseworker also observed S.T. for several minutes, and although he was in bed and wearing long-sleeved pajamas, she saw no injuries to his face. *Id.* at 436:9-438:6 and 439:25:440:19.

**[\*P34]** Weaver argues that the evidence supported his assertion that he was spinning S.T. in a circle and lost his balance, causing S.T. to strike a wall. Appellant's Br. 20. According to Weaver, the pathologist's testimony confirmed that his account was "plausible," along with the testimony of a pediatrician employed by Dayton Children's Hospital who reviewed S.T.'s autopsy report and video excerpts of Weaver's interviews with police. *Id.*; *see also* Tr. of Proceedings 319:6-320:7, 566:3-567:4, 570:7-572:11 and 593:3-595:23. Thus, absent any "direct evidence regarding [the cause of S.T.'s] death or injuries," or "living witnesses" to the incident apart from Weaver himself, Weaver insists that "reasonable mind[s]" could not have found "beyond [a] reasonable doubt [that he] knowingly caused harm" to S.T. Appellant's Br. 20-21.

**[\*P35]** On the record before us, we cannot conclude that the jury clearly lost its way in finding Weaver guilty of murder. Weaver acknowledged that he and S.T. were the only persons at the church throughout the day on November 18, 2015, and they were the only persons on the premises when emergency personnel arrived. Tr. of Proceedings 486:13-486:25 and 509:2-510:25. Shaton Smith's testimony and that of the two caseworkers with the Children Services Division established that S.T. showed no sign of having experienced severe head traumas prior to being placed with the Weavers for foster care, and despite Weaver's contention to the contrary, the two medical experts voiced considerable skepticism in response to Weaver's explanation of S.T.'s injuries.

**[\*P36]** For instance, the pathologist with the Montgomery County Coroner's Office conceded that Weaver's explanation—that he was spinning S.T. in a circle and lost his balance—was technically "possible," but she also testified that "it [was] not plausible based on the [nature and the] number of injuries [S.T.] [had] on his head." (Emphasis added.) *See id.* at 287:11-289:7 and 319:18-320:7. The pediatrician with Dayton Children's Hospital likewise allowed that "it is conceivable that possibly, if a caretaker [were spinning] a child [such that] the back of [the] child's head [were] to strike a wall, [then] that theoretically [could cause] some sort of an injury, maybe bruising" or "even \* \* \* a skull fracture," though in her "opinion that [was] not a plausible explanation" for all of S.T.'s of injuries, the combination of which she described as "inconsistent" with Weaver's version of events. (Emphasis added.) *Id.* at 594:4-595:23. Presented

with Weaver's varying accounts of S.T.'s injuries, his admission that only he and S.T. were present at the church on the day in question, and the independent testimony of two medical experts, the jury reasonably found that Weaver knowingly caused serious physical harm to S.T. and that S.T. died as a proximate result, making Weaver guilty of murder under R.C. 2903.02(B).

 [\*P37]  On Count 6, Weaver was convicted of endangering a child under R.C. 2919.22(A).  To obtain this conviction, the State had to prove that Weaver, as "the parent, guardian, custodian, * * * or person in loco parentis" of a child younger than 18, recklessly "create[d] a substantial risk to [S.T.'s] health or safety * * *, by violating a duty of care, protection, or support." *Id.*; *State v. Hill*, 2d Dist. Montgomery No. 24410, 2011-Ohio-5810, ¶ 55. The conviction related primarily to untreated burns suffered by S.T. in advance of his death. *See* Tr. of Proceedings 275:13-275:20, 578:14-582:5 and 713:15-713:24; Bill of Particulars 3-4, Mar. 27, 2017; Appellant's Br. 21; Appellee's Br. 24.

 [\*P38]  Shaton Smith testified that she never saw any burns or scars on S.T.'s body before he was placed with the Weavers. *Id.* at 384:3-385:17. In her testimony, the Montgomery County pathologist testified that she observed several first degree and second degree burns on S.T.'s right arm, forearm and hand, which she deemed to be likely caused by contact with "a hot surface of some kind," as opposed to contact with hot water or another liquid at high temperature. Tr. of Proceedings 273:4-275:8. She indicated that the burns should have been treated in light of the risk of infection and scarring, and she estimated that the burns were less than "weeks old." *Id.* at 275:9-276:20. Her counterpart from Dayton Children's Hospital gave nearly identical testimony, and both of them concurred that the burns should have been treated by a medical professional. *See id.* at 275:13-275:20, 578:14-580:11 and 578:14-582:5. Weaver denied that he knew the source of the burns but at one point suggested that S.T. might have stumbled into a radiator or space heater. *See id.* at 494:5-494:16 and 675:17-675:19.

 [\*P39]  Again, we cannot conclude that the jury clearly lost its way. The evidence demonstrated that Weaver was S.T.'s foster parent, that he was aware of the burns, and that he did not have them treated by a medical professional. Given the risk of infection and scarring, S.T.'s burns qualified as "serious physical harm" as that term is defined by R.C. 2901.01(A)(5)(d). *See Hill* at ¶ 2-3, 5 and 65. The medical expert testimony provided a reasonable basis for the jury to find that Weaver's inaction had created "a strong [\*\*22] possibility" that S.T. had been or would be harmed, and by extension, a

> reasonable basis for the jury to find further that Weaver had disregarded a "substantial and unjustifiable risk" with "heedless indifference" to the consequences for S.T. R.C. 2901.01(A)(5)(d), 2901.22(C) and 2919.22(A); *see also Hill* at ¶ 55-59 and 65-66.
>
> **[\*P40]** Our determination that the jury did not clearly lose its way in finding Weaver guilty of murder under R.C. 2903.02(B) and endangering a child under R.C. 2919.22(A) obviates the need to evaluate Weaver's contention that the evidence was insufficient to support his convictions for these offenses. *McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary*, 2011-Ohio-3161, ¶ 11. Weaver's second and third assignments of error are overruled.

*State v. Weaver, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

In deciding that Petitioner's convictions were not against the manifest weight of the evidence, the Second District effectively decided they were also supported by sufficient evidence. The evidence recited in the Second District's decision is sufficient to support the convictions and their decision is therefore not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts. Petitioner's Second Ground for Relief, construed as an insufficiency of the evidence claim, should be dismissed.

**Ground Three: Due Process (Prosecutorial Misconduct)**

In his Third Ground for Relief, Petitioner claims he was denied due process of law by the prosecutor's misconduct in opening and closing statements, particularly the prosecutor's reference to the victim as a "healthy" baby.

Weaver raised this claim on direct appeal, although he apparently did not complain specifically about the "healthy baby" remark. The Second District overruled this assignment of error, holding:

> **[\*P42]** In this assignment of error, Weaver complains that the prosecutor made comments during opening and closing statements that prejudiced him. Appellant's Br. 25. Weaver additionally faults the trial court in connection with closing statements for sustaining the prosecutor's objection to a remark made by his defense attorney. *Id.* at 27.
>
> **[\*P43]** Prosecutors, in general, "are entitled to considerable latitude in opening and closing arguments." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 12, citing *Maggio v. City of Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), and *State v. Ballew*, 76 Ohio St.3d 244, 1996- Ohio 81, 667 N.E.2d 369 (1996). To resolve a claim of prosecutorial misconduct, courts evaluate "whether [such] remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420, 2000- Ohio 187, 739 N.E.2d 300

(2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 (1984). The "touchstone of [this] analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Accordingly, "[w]here it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed." *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 78, 1994- Ohio 409, 641 N.E.2d 1082 (1994). We "review allegations of prosecutorial misconduct in the context of the entire trial." *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 47, citing *Stevenson* at ¶ 42.

**[\*P44]** Regarding opening statements, Weaver argues that the prosecutor committed misconduct by telling the jury that it would "hear about the last 56 days of [S.T.'s] short life" in which S.T. was "bruised [and] burned," suffered a skull fracture, and died. Tr. of Proceedings 243:6-243:15; Appellant's Br. 25-26. Weaver describes these remarks as misconduct because "[t]he jury did not hear about the last 56 days" of S.T.'s life, and because the jury would have been prejudiced against him by the prosecutor's implication that he had "tortured [S.T.] for [those] 56 days." Appellant's Br. 26.

**[\*P45]** We disagree. The jury heard ample evidence about S.T.'s life during the period running from September 24, 2015, through November 18, 2015, and the prosecutor's recitation of the various injuries suffered by S.T. accurately reflected the testimony afterward offered by the State's witnesses. In other words, the prosecutor's remarks were not improper and did not constitute prosecutorial misconduct. *Jones*, 90 Ohio St.3d at 420; *State v. Taylor*, 2d Dist. Montgomery No. 23990, 2014-Ohio-3647, ¶ 35-37 and 39.

**[\*P46]** Regarding closing statements, Weaver charges the trial court with error for overruling his objection when the prosecutor commented that "[t]here [was] no legal defense" for the conduct of which Weaver stood accused. Tr. of Proceedings 760:19-761:12; Appellant's Br. 26-27. Weaver argues that the trial court erred because the comments amounted to an "attack [on him for his] failure to testify at trial" in abrogation of his Fifth Amendment right. *Id.* at 27. The context in which the prosecutor made the foregoing comment, however, undermines Weaver's argument.

> **[*P47]** Moments earlier, the prosecutor remarked that what had happened to S.T. "was not an accident," and the court sustained Weaver's objection in response, reminding the parties and the jury that there would be "no instruction on accident." Tr. of Proceedings 760:19-761:4. Although the prosecutor's use of the phrase "no legal defense" was dubious, his intent seems to have been either to portray the abuse of S.T. as indefensible in the ordinary sense of the word, or as the State suggests in its brief, to emphasize that the jury "could not base its verdict on 'sympathy.'" *See id.* at 760:8-762:1; Appellee's Br. 31. We find accordingly that the remark was not improper. Even otherwise, being an isolated remark made at the very end of a long trial, we find that it did not result in unfair prejudice to Weaver.
>
> * * *
>
> **[*P50]** We find that the prosecutor's challenged comment during opening statements was not improper, that the trial court did not err by overruling Weaver's objection to the prosecutor's closing statement, and that the trial court correctly sustained the prosecutor's objection to Weaver's closing statement. Weaver's fourth assignment of error is overruled.

*State v. Weaver, supra.*

In *Serra v. Michigan Dept of Corrections*, 4 F.3d 1348 (6th Cir. 1993), the court identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on

other grounds, 560 U.S. 370 (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied,* 544 U.S. 921 (2005).

> On habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974)). "Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). Yet reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997); see also *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000), overruled on other grounds by, *Bowling v. Parker,* 344 F.3d 487, 501 n.3 (6th Cir. 2003).
>
> In order to obtain relief, Bates must demonstrate that the prosecution's conduct was both improper and so flagrant as to warrant reversal. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003). If this Court finds improper conduct, four factors are considered in determining whether the challenged conduct is flagrant: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *See Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004); *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003); *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982) (en banc) (citing *United States v. Leon,* 534 F.2d 667, 677 (6th Cir. 1976)). Under AEDPA, we are required to give deference to the Tennessee Supreme Court's determination of Bates's prosecutorial misconduct claims. *See Macias v. Makowski,* 291 F.3d 447, 453-54 (6th Cir. 2002)(noting that habeas relief is only appropriate if there "was an unreasonable application of clearly established federal law"); see also *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004) ("Claims of prosecutorial misconduct are reviewed deferentially on habeas review."). In determining whether prosecutorial misconduct mandates habeas relief, we apply the harmless error standard. *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997). An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."

> *Brecht v. Abrahamson*, 507 U.S. 619, 638, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993).
>
> In the context of a death penalty sentencing hearing, however, the question of error or effect is more complex than in traditional trials. Rather than determining whether a constitutional error would have pushed a jury from a "not guilty" verdict to a "guilty" verdict, we must attempt to discover whether the constitutional error influenced the jury's decision between life and death.

*Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005).

Having reviewed the Second District's decision on Weaver's Fourth Assignment of Error, the Magistrate Judge does not find it to be an objectively unreasonable application of the Supreme Court precedent cited by the Sixth Circuit in the foregoing authorities. Therefore Weaver's Third Ground for Relief should be dismissed.

**Ground Four: Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Weaver claims he suffered from ineffective assistance of trial counsel in several unspecified ways and by his attorney's failure to object to the "rantings" of the prosecutor.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction

> or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Weaver raised ineffective assistance of trial counsel as his Sixth Assignment of Error on direct appeal and the Second District decided it as follows:

> **[*P56]** Finally, Weaver argues that his defense attorney did not render effective assistance, blaming his attorney for failing to object to the prosecutor's opening statement on the basis of the "56 days"

> remark, and for failing either to move for severance, or to join in Shureka Weaver's motion to sever. Appellant's Br. 31. Given that we have already determined that the prosecutor's remarks during opening statements were not improper, and that the trial court did not err by overruling Shureka Weaver's motion, the issues raised in this last assignment of error are effectively moot. Consequently, Weaver's sixth assignment of error is overruled.

*State v. Weaver, supra.*

Assuming Weaver is intending to raise here the same ineffective assistance of trial counsel claims he made on direct appeal, this Court should defer to the Second District's decision on this claim because it is not an objectively unreasonable application of *Strickland*. As noted above, *Strickland* has both deficient performance and prejudice prongs. Because the Second District concluded that the prosecutor's remarks and failure to sever were not errors, Weaver cannot have been prejudiced by his attorney's failure to object.

If, on the other hand, Weaver is intending to complain of ineffective assistance of trial counsel in some other respect than was raised on direct appeal, his claims would be barred by *res judicata* which requires that ineffective assistance of trial counsel claims which are shown on the record must be raised on direct appeal. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307 (12th Dist. 1995). However, Weave has not filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 to present any evidence outside the

appellate record.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 5, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).